Case 1:23-mj-00190-BAH   Document 1-1   Filed 01/17/23   Page 1 of 15

23-mj-00190-BAH

FILED ___ ENTERED
___ RECEIVED
12:52 pm, Jan 17 2023
AT  BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____Deputy

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Brian Gorman, a Special Agent with the U.S. Department of Labor Office of Inspector General ("DOL-OIG"), being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. Your Affiant, along with others, is conducting an investigation of Ryan Dales ("**DALES**") concerning fraudulent benefits involving Unemployment Insurance ("UI"), the Paycheck Protection Program ("PPP") and an Economic Injury Disaster Loan ("EIDL").

2. I make this affidavit in support of an application for a Criminal Complaint and Arrest Warrant, charging **DALES** with Wire Fraud in violation of 18 U.S.C. § 1343.

3. I am a Special Agent with DOL-OIG, and have been so employed since July 2022. I am currently assigned to the Baltimore Field Office, where my primary duties are to investigate alleged criminal violations related to matters involving labor racketeering and fraud against DOL programs. Additionally, I am currently assigned to the Maryland COVID-19 Fraud Strike Force with an emphasis on investigating pandemic-related fraud.

4. Prior to DOL-OIG, I was employed with the U.S. Postal Service Office of Inspector General ("USPS-OIG") from April 2020 to July 2022 as a Special Agent, and earlier from March 2019 to April 2020 in an administrative capacity. I have completed the Criminal Investigator Training Program at the Federal Law Enforcement Training Center in Brunswick, Georgia. Prior to employment with DOL-OIG and USPS-OIG, I served honorably on active duty in the U.S. Air Force from January 2013 to January 2019 as a non-commissioned officer, and continue to serve in the Air Force Reserve. I hold a Master of Science in Homeland Security Management and a Bachelor of Arts in Conflict Analysis and Dispute Resolution.

5. Through my training and experience, I have become familiar with the methods and techniques used by criminals to commit financial and other white-collar crimes, and how those criminals conceal and store information and assets related to and derived from such criminal activity.

6. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other investigators and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested Complaint and Arrest Warrant and does not set forth all my knowledge about this matter.

**Background on Maryland Unemployment Insurance**

7. In Maryland, a former employee of a business who has lost his or her job can contact the Maryland Department of Labor ("MD DOL") to submit a claim for UI benefits. Claims for UI benefits are commonly submitted electronically through the use of the Internet and internet-capable computers or other electronic devices. If the former employee meets certain requirements, including having received sufficient wages prior to separation, they become eligible to receive UI benefits.

8. Prior to April 2021, if MD DOL approved a UI claim, Bank of America ("BOA"), pursuant to a contract with MD DOL, would create and mail a BOA Prepaid VISA debit card with the claimant's name on it, to the claimant based upon information received from MD DOL. MD DOL would subsequently authorize the electronic application of UI benefits to the debit card and continue to do so on a periodic basis if the claimant continued to file for benefits.

**The Effect of COVID-19 on State Unemployment Insurance**

9. On March 18, 2020, the President of the United States signed into law the Families First Coronavirus Response Act (FFCRA), which provided additional flexibility for state

2

unemployment insurance agencies and additional administrative funding to respond to the COVID-19 pandemic.

10. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was signed into law on March 27, 2020. It expanded states' ability to provide UI for many workers impacted by the COVID-19 pandemic, including for workers who are not ordinarily eligible for unemployment benefits.

11. The CARES Act created the Pandemic Unemployment Assistance ("PUA") program. Under PUA, states are permitted to provide PUA to individuals who are self-employed, seeking part-time employment, or otherwise would not qualify for regular UI compensation.

12. To qualify for PUA benefits, an individual must not be eligible for regular UI benefits and be unemployed, partially unemployed, or unable or unavailable to work because of certain health or economic consequences of the COVID-19 pandemic.

### EIDL and PPP

13. The CARES ACT also established the PPP. The PPP was subsequently modified and reauthorized by one or more Acts of Congress in 2020 and 2021. The program ended on May 31, 2021. The PPP was available to eligible small business entities, including self-employed individuals, sole proprietorships, and independent contractors, that together with their affiliates (if applicable), had 500 or fewer employees. PPP loans were processed by third party lenders, with 100% of each loan guaranteed by the Small Business Administration ("SBA"). PPP loans were 100% forgivable if the borrower utilized at least 60% of the loan proceeds in the 24 weeks post disbursement, toward payroll costs, which were capped at $100,000 per employee. The remaining 40% could have been used for eligible, business-related mortgage, rent and utility

costs. Any unforgiven portions of PPP disbursements will be serviced as loans. Among other things, PPP applicants were required to certify that the current economic uncertainty made their loan requests necessary to support the ongoing operations of the applicants.

14. In addition to PPP loans, the SBA was given the authority to make direct low-interest, fixed-rate, long-term COVID-EIDLs to small businesses and other entities. Borrowers could use COVID-EIDL working capital loan proceeds to make regular payments for operating expenses and to pay business debt incurred at any time (including business credit card debt), payroll, rent/mortgage, utilities, and other ordinary business expenses.

## **PROBABLE CAUSE**

15. On or about January 13, 2017, **DALES** was charged by criminal complaint in U.S. District Court for the District of Maryland with Bank Fraud and Aggravated Identity Theft, in violation of 18 U.S.C. §§ 1344 and 1028A(a)(1). Subsequently, On or about January 20, 2017, **DALES** had his initial appearance and was ordered detained. On or about February 2, 2017, a federal grand jury returned an indictment charging **DALES** with Bank Fraud Conspiracy in violation of 18 U.S.C. § 1349, and multiple counts of Bank Fraud and Aggravated Identity Theft.

16. On or about November 27, 2017, **DALES** was convicted of one count of Bank Fraud conspiracy in violation of 18 U.S.C. § 1349 (Count One) and one count of Aggravated Identity Theft (Count Five) in violation of 18 U.S.C. § 1028A(a)(1). On or about May 3, 2019, **DALES** was sentenced to 38 months' imprisonment as to Count One and 24 months' imprisonment, consecutive, as to Count Five.

17. On or about June 4, 2021, **DALES**, having served his sentence, was released from the custody of the Bureau of Prisons ("BOP"), and his period of supervised release began.

18.     According to the U.S. Probation and Pretrial Services, prior to his release from the BOP and onto supervised release, **DALES** resided at a "halfway house" operated by Volunteers of America (VOA) from approximately December 9, 2020, to June 4, 2021.[1]  Specifically, **DALES** resided at the VOA Residential Re-Entry Center located at 5000 E Monument St, Baltimore, MD 21205.

19.     Based on my investigation to date, I have identified various UI, EIDL, and PPP applications submitted in the name of **DALES** and purported businesses that he allegedly operated or controlled beginning in or about December 2020—when he began residing at the halfway house—and continuing thereafter.  These UI, EIDL, and PPP applications contained false statements and misrepresentations regarding **DALES**, his employment and purported businesses.  At times, the applications included fabricated documents, including fake and fraudulent Internal Revenue Service (IRS) tax records.

20.     All loan applications and supporting documents were submitted by **DALES** to MD DOL or the SBA (or through SBA authorized lenders) electronically via the internet, causing interstate wire communications to be sent in furtherance of the scheme to defraud.  They are discussed in turn below.

### December 2020 UI Claim

21.     According to MD DOL records, on December 15, 2020, shortly after **DALES** began residing at the VOA halfway house, an unemployment claim in **DALES's** name was submitted under the regular UI program representing that **DALES** was self-employed.  The IP address used for the application was 165.117.248.240, which resolved Volunteers of America,

---

[1] A "halfway house" is a facility that provides in-patient treatment services (*e.g.* mental health, addiction) in a restricted-freedom environment, typically for those transitioning from prison to free, independent living.

5000 East Monument Street in Baltimore—the halfway house where **DALES** was residing at the time.

22. The application noted that **DALES's** occupation was "Barbers" [sic], but answered "No" to the question of whether he worked as a "Barber or Cosmetologist." In response to the question, "If self-employed, when did you stop being able to provide services," the date "4/5/2020" was listed. The listed email address on the application was theycallmedales@gmail.com. According to MD DOL records, later on December 15, 2020, MD DOL advised **DALES** that he had not earned sufficient wages in the prior year in order to be eligible for benefits under the regular UI program.

23. On July 30, 2021, over six months later, **DALES** reopened his original UI claim, seeking benefits under the PUA program.[2] In order to obtain PUA benefits, a claimant is often requested by state workforce agencies to provide documentation (*e.g.*, IRS Form 1065, Schedule K-1; IRS Form SS-4s, Application for EIN; IRS Form 1099, Miscellaneous Income; IRS Form 1040, Schedule C, et cetera). The purpose of requiring these such tax documents, or those otherwise only attainable by a legitimate person or entity, is to assess how much money is earned or paid from being self-employed, and thereby establish both eligibility and the weekly benefit amount to which a claimant is entitled.

24. At the request of MD DOL, **DALES's** PUA claim was supported by uploading two apparent IRS documents—a SS-4 EIN Assignment and a IRS Form 1040, Schedule C, Sole Proprietorship Profit and Loss Statement.

---

[2] As mentioned above, states are permitted to provide PUA to individuals who are self-employed, seeking part-time employment, or otherwise would not qualify for regular UI compensation. An individual must not be eligible for regular UI benefits and be unemployed, partially unemployed, or unable or unavailable to work because of certain health or economic consequences of the COVID-19 pandemic.

25. The purported IRS Form SS-4 provided to MD DOL indicated that **DALES** was the sole member of a purported business known as "KNW Group," with a mailing address of 5522 Wesley Ave in Gwynn Oak, Maryland. The EIN number assigned to KNW Group on the SS-4 is 86-3151292, and was issued on April 6, 2018, which was during the period of time when **DALES** was incarcerated.

26. Open-source research indicates that 5522 Wesley Avenue in Gwynn Oak, Maryland, the address listed on the application, is a 1,560 square foot single-family home, and is owned by Kenneth and Annette Dales, whom your affiant believes to be **DALES's** father and mother based on database searches.

27. The purported IRS Form Schedule C provided to MD-DOL covered the 2019 tax year and listed the proprietorship name as "Knw Gr86oup" ("KG"), which allegedly provided beautician services. Line item 7 on the Schedule C indicated a gross profit for KG of $144,112.35, with total expenses adding up to $45,031—determining KG a net profit of $99,081.35.

28. Your affiant obtained and reviewed tax returns and documents associated with **DALES** and/or KG from the IRS.

29. In the 2019 IRS Form 1040 tax return for **DALES**, line 7a, reads "Other income from Schedule 1, line 9." I know from knowledge, training, and experience, that a Schedule 1 is an attachment to IRS Form 1040 that reports a tax filer's additional income, including one's business income or loss which is further documented by way of the IRS Form Schedule C – "Profit or Loss from Business (Sole Proprietorship)". On **DALES's** 2019 IRS Form 1040 tax return, line 7a was blank, and there was no supplemental Schedule 1 or Schedule C.

30. On **DALES's** 2020 IRS Form 1040 tax return, line 8 reads "Other income from Schedule 1, line 9". As mentioned above, the Schedule 1 is where an individual reports additional income, including business income or loss derived from a Sole Proprietorship, and documented on a Schedule C. On **DALES's** 2020 IRS Form 1040 tax return, no income was listed on line 8, and there was no supplemental Schedule 1 or Schedule C. The return also indicated that **DALES** was unemployed at the time of the Form 1040 filing.

31. The IRS thus has no record of an IRS Form Schedule C having been filed by **DALES** for the 2019 and 2020 tax years. Of course, **DALES** was incarcerated during the timeframe in which the purported Schedule C provided to MD DOL indicated that **DALES** owned/operated a sole proprietorship earning net profits of $99,081.35. Accordingly, I believe that the IRS Form Schedule C for KG uploaded to support **DALES's** PUA claim was false and fraudulent and utilized to obtain and maximize UI benefits for which **DALES** was not otherwise eligible.

32. Indeed, as a result of the documentation provided in support of **DALES's** claim, MD DOL paid approximately $25,570 between August 2021 and September 2021. In addition, MD DOL records indicate that **DALES's** PUA claim was backdated to the date his purported unemployment began, with an effective date of December 2020. The listed email address on the application again was theycallmedales@gmail.com.

33. According to MD DOL, **DALES** was eligible for a PUA claim without being required to provide a Schedule C, but the claim would have only paid a minimum weekly benefit amount of $130. As a result of **DALES's** use of the Schedule C, the weekly benefit amount was increased to a maximum of $430 per week.

### December 2020 – Dales Drop EIDL Application

34. On or about December 29, 2020, an EIDL application (#3315854229) for business "Ryan Dales," d/b/a "Dales Drop Inc." ("DALES DROP") was submitted to the SBA, an entity whose servers are located outside of the District of Maryland.

35. The application provided a social security number ("SSN") or employer identification number ("EIN") ending in 8181, identical to the SSN belonging to **DALES**. The telephone number associated with the application was (443) 652-7684. I know from U.S. Probation and Pretrial Services in the District of Maryland that **DALES** uses this number to communicate with his probation officer. Additionally, the email address provided on the EIDL application was "Theycallmedales@gmail.com," an account—according to records provided by Google—which belongs to **DALES**.[3]

36. According to information contained in the application, DALES DROP is an "agriculture" business established on March 15, 2018 (when **DALES** was federally incarcerated), with three (3) employees and 2019 gross revenue of approximately $10,000, and $6,000 in costs of goods sold.

37. The application for DALES DROP listed a primary business address of 3231 Southgreen Rd, in Windsor Mill, MD 21244—a residential address in Baltimore County, Maryland. Open-source research indicates this is a single-family residence, which was sold by "Evelyn J Dales" on December 10, 2020, for approximately $235,000.

38. The following question on the application was answered "No" in the subsection titled "Additional Information," item "a.":

---

[3] The account is subscribed to **DALES**, lists his true date of birth in March of 1988, along with a telephone number of (443) 652-7684 as a contact method.

> a. Are you presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction? b. Within the last 5 years, for any felony, have you ever been convicted, plead guilty, plead nolo contendere, been placed on pretrial diversion, or been placed on any form of parole or probation (including probation before judgment)?
> No

39. Again, I know that **DALES** had a past fraud conviction within five years of the date of this application, thus making him ineligible for EIDL funding.[4]

40. SBA records show that the application was ultimately denied due to "unsatisfactory credit history."

### March 2021 – Cross River Bank PPP Application

41. On or about March 24, 2021, a PPP loan application was submitted online to Cross River Bank, an SBA approved lender, from owner "Ryan Dales," with a provided "signer ID" and email address of theycallmedales@gmail.com. The application asserted over $8,000 in average monthly payroll for the sole proprietorship, and sought more than $20,000 in funds for "payroll, rent/mortgage interest, utilities, and covered operations, expenditures, and covered supplier costs." The application listed a business start date of "08/2018"—a time when **DALES** would have been incarcerated.

42. Again, the application listed, among other things, telephone number (443) 652-7684—a number known to be used by **DALES** (discussed above) and **DALES's** real date of birth, as it appears on his Maryland Identification Card. The address provided was 5522 Wesley Ave, Baltimore (Windsor Mill), Maryland, 21207—an address believed to belong to **DALES's** parents, as noted above.

---

[4] As noted above, on November 27, 2017, **DALES** was convicted of one count of bank fraud conspiracy and one count of aggravated identity theft—both felonies.

43. The application to Cross River Bank included a purported 2019 IRS Form Schedule C. The Schedule C listed **DALES's** name, an address of 5522 Wesley Ave, Baltimore, Maryland, his actual SSN ending in 8181, and stated that **DALES's** "principal business" was "home improvement." On the Schedule C, line G, "Yes," was answered to the question whether of whether **DALES** did "materially participate in the operation of this business during 2019." As noted, **DALES** was incarcerated during the entirety of 2019, so this was a false and fraudulent representation. Line item 7 of the purported Schedule C listed a gross profit of $113,219, and line 28 listed total expenses of $10,117 – yielding a net income of $103,102.

44. The DALES application to Cross River Bank also contained a color image of **DALES's** actual Maryland Identification Card (D-420-755-234-159), which listed his home address as 3231 Southgreen Rd, Windsor Mill, Maryland, 21244. The application further included a Wells Fargo bank statement for a checking account ending in 0800, which listed **DALES** in the header as the purported account holder. The applicant further uploaded a fillable portable document file (*i.e.* "PDF") of a voided check from Navy Federal Credit Union for a checking account ending in 0799, which listed **DALES's** name and an address in Hyattsville, Maryland. This check image was dated March 8, 2021.

45. **DALES** would have been incarcerated during his alleged business formation, the entire 2019 tax year, and under supervised release conditions from prison at the time indicated on the voided check. The PPP loan ultimately did not close.

## Google Accounts Linked to DALES

46. On or about June 22, 2022, United States Magistrate Judge Brendan A. Hurson issued a federal search warrant for the Google account theycallmedales@gmail.com, which was the email account listed on the UI, PPP, and EIDL applications referenced above. On June 29,

2022, Google provided records that indicated the account was created in 2009 and registered to "Ryan Dales." The Google records list **DALES's** true date and month of birth in 1988 and a recovery phone number of 443-652-7684.

47. Your affiant and other federal agents reviewed the contents of the Google account, and found multiple emails with the Maryland Department of Labor regarding UI. Law enforcement also found emails in which **DALES** was being warned that he had an insufficient funds balance or was declined for lines of credit with Wells Fargo and Navy Federal Credit Union.

48. On or about May 1, 2021, the theycallmedales@gmail.com address received an email from an automotive retailer indicating that a cash payment of $64,690 had been requested for the purchase of a 2017 Mercedes Benz S-Class vehicle, though it is unclear if the sale in fact went through.[5] Additional emails revealed that, in or about January 2022, **DALES** began residing at Anthem House, a luxury rental apartment building in the Locust Point area of Baltimore City.[6]

49. On or about November 10, 2022, United States Magistrate Judge Matthew J. Maddox issued a federal search warrant additional Google accounts linked to **DALES**—dalesbackup1@gmail.com, ryane.dales@gmail.com, and rocdello@gmail.com.

50. On or about December 19, 2022, Google provided records that indicated dalesbackup1@gmail.com was subscribed to "Dales Dales." The account was created on December 10, 2020—the day after **DALES** began residing at the VOA Halfway House. This was

---

[5] On May 1, 2021, **DALES** received an email with a confirmation number approximately 30 minutes after reserving or ordering the vehicle.

[6] On or about December 12, 2022, Bozzuto, the management company for Anthem House, provided records showing that on or about January 22, 2022, **DALES** had signed a one-year lease for a two-bedroom, two-bathroom apartment with monthly rent due of $3,064. As of December 2022, **DALES** was delinquent in rent payments by approximately four months.

only five (5) days before **DALES** submitted an unemployment claim under the Maryland regular UI program, representing he was self-employed; and nineteen (19) days before **DALES** submitted an EIDL application to the SBA in the business name of "Ryan Dales" dba "Dales Drop Inc." The recovery SMS number for the account was 443-652-7684. Again, this is the same number listed on the EIDL application for the purported business "Dales Drop Inc." and the same number I know **DALES** used to contact his Probation Officer during his current term of supervised release.

51. A review of the content of Google accounts ryane.dales@gmail.com, dalesbackup1@gmail.com, rocdello@gmail.com revealed, among other things, multiple emails from banking and money transfer institutions such as PayPal and Venmo linked to the email accounts. The subscriber for ryane.dales@gmail.com was "Ryan Dales" with a recovery email of rocdello@gmail.com.

### Apple Accounts Linked to DALES

52. On or about November 10, 2022, United States Magistrate Judge Matthew J. Maddox issued a federal search warrant for the Apple IDs theycallmedales@gmail.com, ryane.dales@gmail.com, and rocdello@gmail.com.

53. Apple subscriber information revealed all three accounts were registered to "Ryan Dales," with associated address 3231 Southgreen Road, Windsor Mill, Maryland.[7] Apple DSID 1328853765 (Apple ID ryane.dales@gmail.com) was associated with phone number 443-652-7684—the same phone number used on the EIDL and PPP loan applications referenced above.

54. A review of iCloud records for Apple ID ryane.dales@gmail.com revealed dozens of driver's license or mug-shot style photographs of individuals who were not **DALES**. Several

---

[7] As noted above, 3231 Southgreen Rd., Baltimore, Maryland is the address listed on the EIDL application submitted for the purported sole-proprietorship "Dales Drop Inc."

13

of these photographs were also found on separate images of Driver's Licenses or State Identification (ID) cards. Some of the ID cards contained the same photo, but different Personal Identifiable Information (PII) listed on the ID.

55. For example, the search warrant results included a single image of an unknown black male wearing a gray zip-up hoodie in front of a solid off-white background. Your affiant has located the same image in at least four other identification documents: three Maryland Driver's Licenses and one South Carolina Driver's License, all containing different PII. Queries with the Maryland Motor Vehicle Administration (MVA) indicated the PII on one of the Maryland licenses belonged to a white male who was 6'1" and 200lbs, not the black male pictured and listed as 5'8" and 163lbs. The second Maryland License did not return any results when the Driver's License number was queried with the MVA, indicating it may be fictitious. The third Maryland Driver's license with the same photo listed **DALES**'s name and date of birth, although it is not believed that the photo is of **DALES**.

56. Your affiant and other law enforcement personnel also found images linked to Apple ID ryane.dales@gmail.com of pay stubs or earnings statements in several different names. A document dated September 1, 2020, was labeled as an Earnings Statement for **DALES** from a purported production company with a net pay of $20,660.76 and year-to-date net pay of $61,982.28.[8] As referenced above, **DALES** was released from the Bureau of Prisons and resided at a halfway house beginning on December 9, 2020.

## CONCLUSION

---

[8] I have not been able to find any record of articles of organization of incorporation filed with the State of Maryland for this purported business.

57. In sum, based on the information in this affidavit, there is probable cause to believe that, on or about December 15, 2020, **DALES** committed Wire Fraud, in violation of 18 U.S.C. § 1343, in the District of Maryland. Accordingly, I respectfully request the Court authorize a Criminal Complaint and Arrest Warrant for **DALES**.

Respectfully submitted,

*Brian W. Gorman*

Special Agent Brian Gorman
U.S. Department of Labor
Office of Inspector General

Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and 41(d)(3) this \_\_\_\_13th\_\_\_\_ of January 2023.

THE HONORABLE BRENDAN A. HURSON
UNITED STATES MAGISTRATE JUDGE